*581 OPINION OF THE COURT
Francis T. Collins, J.
Claimant’s motion to reopen on the basis of newly discovered evidence a claim previously settled and discontinued by agreement of the parties is denied.
The movant herein filed a claim as administratrix of the estate of George Mahonski on May 24, 1995. The claim sought to recover damages for the decedent’s wrongful death and conscious pain and suffering as the result of a one-vehicle accident which occurred on Route 9 in the City of Albany, New York, on January 27, 1994. Following a trial the court found liability on behalf of the State and awarded claimant the following sums:
Past lost earnings $39,120.00
Past lost fringe benefits $2,937.00
Future lost earnings $411,304.20
Future lost fringe benefits $31,464.60
Future lost household services $269,653.80
Since future damages awarded exceeded $250,000, the court directed that judgment on the decision be held in abeyance pending the outcome of a hearing pursuant to CPLR article 50-B.
Prior to the hearing, the parties entered into a written final stipulation of settlement which was “So Ordered” on September 2, 1998 and filed with the Clerk of the Court on September 23, 1998. The parties thereafter executed a stipulation discontinuing the action which was filed with the Clerk of the Court on February 16, 1999. They then proceeded to Surrogate’s Court in Albany County for distribution of the agreed upon damages set forth in the stipulation of settlement.
The relief requested by this motion is stated in paragraph 4 of counsel’s affirmation in support which seeks “to reopen the trial on the issue of damages, pursuant to § 9 of the Court of Claims Act, subdivision 8, upon the ground there exists newly discovered evidence material to the issue of damages and the distribution of those damages.” In particular, it is alleged that subsequent to the settlement and discontinuance of the prior action, and in the course of Surrogate’s Court proceedings relating to the settlement agreement, it was discovered that the decedent “left two children separate from his marriage with *582 claimant, Judith Mahonski.” The existence of the children was revealed by the decedent’s father and an investigation of the matter was undertaken. It is alleged that the investigation confirmed that the decedent had, in fact, fathered two children: Andrew John Mahonski, born March 21, 1987, and Jennifer Mahonski, born January 5, 1989. Attached to the motion papers is various correspondence between movant’s counsel and Albany County Surrogate’s Court in which it is stated that Andrew Mahonski was adopted on January 28, 1992. Also attached is the affidavit of Judith Mahonski in which she states that she had no knowledge of the decedent having fathered any children during or prior to their marriage.
Against this factual backdrop the movant alleges that Jennifer Mahonski, the purportedly unadopted infant, has a legally cognizable interest in the decedent’s estate and that the prior discontinued action should be reopened “for the purpose of recalculating the distribution of the recovery among both survivors, if indicated, and if the Court requires, the allowance of the admission of additional proof relating to any potential damages to which the surviving child may be entitled” (affidavit in support para 11). Alternatively, movant seeks to reopen the settlement “for the purpose of determining the allocation and distribution to the daughter” (affidavit in support para 7).
Movant’s attempt to reopen the prior action or the trial had therein is misplaced. In the first instance, the court’s prior determination of liability and damages is immaterial to the issue presented. These prior acts were superceded by an agreement to settle the matter signed by the claimant, her attorney and defense counsel and “So Ordered” by the court. Further, a stipulation discontinuing the prior action was filed with the court.
The stipulation of settlement provided that it would constitute “a full and binding release and complete settlement between the parties” upon being “So Ordered” by the court. The agreement provided that the claimant completely released and forever discharged the defendant from “any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which the Claimant now has, or which may hereafter accrue or otherwise be acquired.”
The agreement further recited that the release was a general release pursuant to which the claimant “expressly waives and *583 assumes the risk of any and all claims for damages which exist as of this date but of which the Claimant does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which if known would materially affect the Claimant’s decision to enter into this Stipulation of Settlement.” The claimant further agreed that she had “accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact, and she assumes the risk that the facts or law may be otherwise than she believes.” Finally, the stipulation provided that it would become effective immediately upon execution by the parties and approval of the court.
Although it is presumed that an action is not terminated solely by the making of an agreement to settle between the parties, the presumption is overcome “upon a showing that the parties have executed an express, unconditional stipulation of discontinuance, or have entered judgment in accordance with the terms of the settlement” (Teitelbaum Holdings v Gold, 48 NY2d 51, 56 [1979]). Neither the settlement agreement nor the stipulation of discontinuance filed with the court on February 16, 1999 is conditional in nature. Thus the stipulation of discontinuance terminated the prior Court of Claims action and necessarily divested this court of any authority to provide the relief requested. “A motion must be addressed to a pending matter. Because the proceeding in this case was terminated by the parties’ stipulation, respondents’ sole remedy was to bring a plenary action to set aside the stipulation of settlement” (Matter of Village of Greenwood Lake v Mountain Lake Estates, 189 AD2d 987, 987 [1993]). While the court is aware that the requirement of a plenary action has been the subject of criticism, especially with regard to its application to nonparties whose interests may be adversely affected by the discontinuance (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3217:10), the court is compelled to follow current precedent and therefore finds that the parties unconditionally terminated the prior action by execution of the stipulation of settlement and filing of a stipulation of discontinuance thus precluding the relief requested herein by motion (see, Herald Sq. Foot Care Assoc. v Indemnity Ins. Co. of N. Am., 257 AD2d 551 [1999]; Hotel Prince George Affiliates v Grimbilas, 241 AD2d 302 [1997]). In fact, it has been stated that where an action has been discontinued by consent of the parties, it is as though the action never existed (Matter of Creamer, 37 AD2d 33 [1971]). It follows therefrom that since no action *584 currently exists in this court, there are no relevant orders or judgments subject to vacatur, amendment, correction or modification in furtherance of justice and no other demonstrated basis for relief pursuant to Court of Claims Act § 9 (8). To the extent the motion seeks such relief, it is denied.
Assuming, arguendo, that the requested relief was available by motion, the court would still be compelled to deny the motion because “[stipulations of settlement are favored by the courts and not lightly cast aside * * * [o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation” (Hallock v State of New York, 64 NY2d 224, 230 [1984]; see also, Matter of Janet L. [Gillray L.], 200 AD2d 801, 803 [1994], lv dismissed in part and denied in part 83 NY2d 941 [1994]; Robison v Borelli, 239 AD2d 656 [1997]). In this matter the movant does not assert that the stipulation of settlement was entered into as the result of fraud, collusion or overreaching. Instead, the court understands the argument made as alleging a mutual mistake on the part of the parties, i.e., the mistaken belief that there were no other parties potentially interested in the underlying action.
In order to vacate a stipulation of settlement entered into under a mutual mistake of fact “it must be demonstrated by clear and convincing proof that such mutual mistake existed when the agreement was made and is so substantial that the agreement fails to represent a true meeting of the parties’ minds” (Matter of Janet L. [Gillray L.], 287 AD2d 865, 866 [2001]; see also, French v Quinn, 243 AD2d 792 [1997]; Vermilyea v Vermilyea, 224 AD2d 759 [1996]). Here the mistake alleged is not merely the existence of a child fathered by the decedent but the existence of a child possessing a legal right and interest in the subject matter of the agreement.
EPTL 5-4.4 (a) provides that damages recovered in a wrongful death action, whether by action or settlement, “are exclusively for the benefit of the decedent’s distributees and, when collected, shall be distributed to the persons entitled thereto under 4-1.1 and 5-4.5.” EPTL 4-1.1 establishes the manner of distribution of a decedent’s intestate estate. EPTL 5-4.5 addresses the issue of nonmarital children and provides as follows:
“§ 5-4.5 Non-marital children
“For the purposes of this part, a non-marital child is the distributee of his father and paternal kindred and the father *585 and paternal kindred of a non-marital child are that child’s distributees to the extent permitted by 4-1.2.”
EPTL 4-1.2 provides that a nonmarital child, is the legitimate child of his or her mother (EPTL 4-1.2 [a] [1]) while such a child may be considered the legitimate child of his or her father only if certain conditions are met (EPTL 4-1.2 [a] [2]). Proof of paternity is established where a court has entered an order of filiation; an acknowledgment of paternity has been executed; the father has signed an instrument acknowledging paternity (subject to certain formalities); paternity has been established by clear and convincing evidence and acknowledged by the father in an open and notorious manner; or a blood genetic marker test has been administered which, together with other evidence, establishes paternity by clear and convincing evidence.
The interaction of the above statutes establishes that only statutorily qualified distributees are entitled to the proceeds of a wrongful death action or settlement (DeLuca v Gallo, 287 AD2d 222, 225 [2001]; Matter of Arroyo, 273 AD2d 820 [2000]). For purposes of a wrongful death action, a nonmarital child is not a distributee possessing a right and interest in the proceeds of an action or settlement unless paternity is established through one of the devices provided in EPTL 4-1.2 (a) (2) (A)(D).
The only proof of paternity offered by the movant is the birth certificate of Jennifer Ann Mahonski (exhibit H) in which the decedent is named as the father. Mr. Mahonski did not sign the certificate nor is it executed in the manner required of a signed writing acknowledging paternity pursuant to EPTL 4-1.2 (a) (2) (B). While a birth certificate naming a putative father may, together with additional proof showing open and notorious acknowledgment, establish paternity pursuant to EPTL 4-1.2 (a) (2) (C), no such supplemental proof has been set forth on the motion (Matter of Reyes, NYLJ, Apr. 15, 2002, at 28, col 2; cf., Matter of Sekanic, 271 AD2d 802 [2000]; Matter of Bonanno, 192 Misc 2d 86 [2002]).
It is not alleged that the child was the product of a previous marital relationship, and decedent’s wife, the movant herein, states in her affidavit that she had no knowledge of children born to the decedent prior to their marriage. Nor was she aware of any contact between the decedent and either of the two children he is alleged to have fathered.
The motion record is wholly inadequate to establish that Jennifer Ann Mahonski may qualify as one of the decedent’s *586 distributees under the EPTL, an essential element in demonstrating that the infant possesses a legally cognizable interest in the wrongful death settlement proceeds at issue herein. Movant has offered no proof that paternity on behalf of the decedent was documented or acknowledged in such a manner as to lend support to movant’s allegations that the child is a distributee of the decedent entitled to a share of the settlement proceeds. In the absence of such proof the movant has failed to establish the existence of a material mistake of fact warranting the vacatur or setting aside of the settlement agreement. For the same reasons, the movant has likewise failed to justify the exercise of the court’s discretion to act in the interests of justice pursuant to Court of Claims Act § 9 (8).
For the reasons stated above, the claimant’s motion to reopen the underlying action or, alternatively, to set aside the settlement agreement is denied.